1  Arnold R. Levinson    (State Bar No. 066583)
   Brian H. Kim    (State Bar No. 215492)
2  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
3  600 Montgomery St., 31st Floor
   San Francisco, California 94111
4  Telephone: (415) 433-8000
   Facsimile:  (415) 433-4816
5  Email: alevinson@pillsburylevinson.com
          bkim@pillsburylevinson.com
6
   Attorneys for Plaintiff
7  KENNETH S. KLEIN

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 KENNETH S. KLEIN,                    )  Case No.  09 CV 2843 W (MDD)
                                        )
12         Plaintiff,                   )  **PLAINTIFF'S BRIEF IN SUPPORT OF**
                                        )  **JOINT MOTION FOR DETERMINATION**
13     vs.                              )  **OF DISCOVERY DISPUTE**
                                        )
14 THE NORTHWESTERN MUTUAL LIFE         )  **Date:          TBD**
   INSURANCE COMPANY; STANDARD          )  **Time:          TBD**
15 INSURANCE COMPANY; FOLEY &           )  **Dept.:         Courtroom D**
   LARDNER LONG-TERM DISABILITY PLAN;)     **Magistrate Judge:   Hon Mitchell D. Dembin**
16 and DOES 1-30, inclusive,            )
                                        )
17         Defendants.                  )
   _____)

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF          Case No.  09 CV 2843 W (MDD)
DISCOVERY DISPUTE

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................1

        A.      Plaintiff's Claim for Disability Benefits and Defendants' Denial.................1

        B.      The "Claims Handling" Prompting This Litigation ....................................3

        C.      Plaintiff's Allegations Regarding Defendants' Secret Attorney Group .......5

        D.      Defendants' Waiver of the Attorney-Client Privilege.................................8

        E.      The Discovery Requests and the Parties' Meet and Confer Efforts ...........9

III.    ARGUMENT .....................................................................................................11

        A.      Defendants Should Be Compelled to Provide Information and Documents
                Relating to Attorney-Client Communications Made During the Claims Process ......11

                1.      The Fiduciary Exception Applies to the Communications Made During the
                        Course of Claims Administration ................................................11

                2.      The Attorney-Client Communications Must Be Produced Because Of
                        Defendants' Waiver ...................................................................14

        B.      Defendants Should Be Compelled to Provide Information and Documents Relating
                to the Issue of Defendants' Structural Conflict of Interest .........................15

                1.      Information and Documents Re: Number of Claims Reviewed by Insurers,
                        Individuals and Vendors ..............................................................16

                2.      Documents Relating to the Performance Evaluations of the Employees,
                        Physician Reviewers of Defendants ..............................................18

                3.      Documents Relating to Jim Kostur's Panel at the 2009 Eastern Claims
                        Conference ................................................................................19

                4.      Documents Relating to Defendants' Policies and Procedures.......................20

                5.      Documents Relating to the Complete Claim File Including Electronic
                        Documents .................................................................................21

                6.      Defendants Cannot Show Any Burden from Producing the Requested
                        Information of Documents As It Has Refused to Provide Any Information
                        Regarding Its Efforts In Complying With The Discovery Requests.............22

        C.      Defendants Should Be Compelled to Provide Information and Documents
                Relating to Its Policies and Procedures That Are the Subject of Plaintiff's
                Claim for Statutory Penalties and Equitable Relief Claim .........................22

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF          Case No.  09 CV 2843 DMS (MDD)
DISCOVERY DISPUTE

D.     Defendants Should Be Compelled to Provide Responses and Documents Without a Protective Order........................................................................23

IV.     CONCLUSION .................................................................................................25

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

Case No. 09 CV 2843 DMS (MDD)

# TABLE OF AUTHORITIES

*Cases*

*Abatie v. Alta Health & Life Ins. Co.*
458 F.3d 955 (9th Cir. 2006) ...................................................7, 15, 16, 20, 21

*Allen v. Honeywell Retirement Earnings Plan*
698 F.Supp. 2d 1197 (D. Ariz. 2010) ...............................................11, 12

*Asuncion v. Metro. Life Ins. Co.*
493 F. Supp. 2d 716 (S.D.N.Y. 2007) ......................................................12

*Black v. Pitney Bowes*
2006 U.S. Dist. LEXIS 92263 (S.D.N.Y. Dec. 21, 2006) ......................................12

*Bland v. Fitatallis North Am. Inc.*
401 F. 3d 779 (7th Cir. 2005) .............................................................5

*Buzzanga v. Life Insurance Company of North America*
2010 WL 1292162 (E.D. Mo. April 5, 2010) ..................................................13

*Callan v. Christian Audigier, Inc.*
263 F.R.D. 564 (C.D. Cal. 2009) .........................................................14

*Dine v. Metro. Life Ins.*
255 F.R.D. 534 (C.D. Cal. 2009) .........................................................16

*Ehrman v. Standard Insurance Co.*
2007 WL 1288465 (N.D.Cal., May 2, 2007) ..................................................23

*Everett v. U.S.Air Group, Inc.*
165 F.R.D. 1 (D.D.C. 1995) ..............................................................5

*Firestone Tire & Rubber Co. v. Bruch*
489 U.S. 101 (1989) .....................................................................7

*Foltz v. State Farm Mut. Auto Ins. Co.*
331 F.3d 1122 (9th Cir. 2003) ...........................................................24

*Friedrich v. Intel Corp.*
181 F.3d 1105 (9th Cir.1999) ............................................................20

*Gessling v. Group Long Term Disability Plan*
639 F.Supp.2d 947 (S.D. Ind. 2009) ......................................................18

*Gundersen v. Metropolitan Life Ins. Co.*
2011 WL 487755 (D. Utah Feb. 7 2011) ....................................................12

*Hangarter v. Provident Life and Acc. Ins. Co.*
373 F.3d 998 (9th Cir. 2004) .............................................................1

*Harper v. Unum Life Ins. Co. of Amer.*
3007 WL 1792004 (E.D. Cal. Jun. 19, 2007) ...............................................16

-iii-

*Jordan v. Northrop Grumman Corporation Welfare Benefit Plan*
370 F.3d 869 (9th Cir.2004) ................................................................................7

*Kentucky Ass'n of Health Plans v. Miller*
538 U.S. 329 (2003) ........................................................................................7, 8

*Knopp v. Life Ins. Co of N. Am.*
2009 WL 5215395 at *4 (N.D. Cal. 28, 2009) ................................................18

*Levy v. Ina Life Ins. Co. of New York*
2006 WL 3316849 (S.D.N.Y. Nov. 14, 2006) ................................................24

*McCurdy v. Metro. Life Ins. Co.*
2007 WL 915177, *5 (E.D. Cal. Mar. 23, 2007 ........................................16, 20

*Metropolitan Life Ins. Co. v. Glenn, __ U.S. __*
128 S.Ct. 2343 (2008) ...................................................................................6, 13

*Montour v. Hartford Life & Acc. Ins. Co.*
588 F.3d 623 (9th Cir. 2009 ............................................................................7, 8

*Myers v. Prudential Ins. Co. of Am.*
581 F.Supp.2d 904 (E.D. Tenn. 2008) .............................................................18

*Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK026458*
2006 WL 4690828 *2-3 (S.D. Cal. July 11, 2006)............................................12

*Pansy v. Borough of Stroudsburg*
23 F.3d 772 (3rd Cir. 1994)...............................................................................25

*Pearson v. Miller*
211 F.3d 57 (3rd Cir. 2000 ...............................................................................25

*Rhoads Industries, Inc. v. Building Materials Corp. of Amer.*
254 F.R.D. 216 (E.D. Pa. 2008) ..................................................................14, 15

*Santos v. Quebecor World Long Term Disability Plan*
254 F.R.D. 643 (E.D. Cal. 2009)......................................................................18

*Shields v. UnumProvident Corp.*
2007 U.S.Dist. LEXIS 17836 (S.D.Ohio March 9, 2007)..................................12

*Smith v. Jefferson Pilot Fin. Ins. Co.*
245 F.R.D. 45 (D. Mass. 2007) ......................................................................5, 13

*Solis v. The Food Employers Labor Relations Ass'n*
F.3d --, 2011 WL 1663597 (4th Cir. 2011) ........................................................4

*Sullivan v. Deutsche Bank Americas Holding Corp.*
2010 WL 391821 (S.D.Cal. Jan. 2, 2010) ...................................................16, 18

*U.S. v. Mett*
178 F.3d 1058 (9th Cir. 1999) ................................................................4, 11, 12

-iv-

*United States ex rel Bagley v. TRW, Inc.*
    204 F.R.D. 170 (C.D. Cal. 2001) ........................................................14

*United States v. De La Jara*
    973 F.2d 746 (9th Cir. 1992) ..............................................................14

*UNUM Life Ins. Co. v. Ward*
    526 U.S. 358 (1998) ...............................................................................7

*Walker v. Metropolitan Life Ins. Co.*
    585 F.Supp.2d 1167 (N.D. Cal. 2008)...........................................16, 17

*Welch v. Metropolitan Life Ins. Co.*
    480 F.3d 942 (9th Cir. 2007) .........................................................15, 16

*Whelan v. Standard Ins. Co.*
    2009 WL 57053 (C.D. Cal. Apr. 14, 2009) ........................................16

*Wilcox v. Wells Fargo & Co. Long-Term Disability Plan*
    2009 WL 57053 (D. Ariz. Jan. 8, 2009).........................................16, 17

*Wood v. McEwen*
    644 F.2d 797 (9th Cir. 1981) ...............................................................25

*Zewdu v. Citigroup Long Term Disability Plan*
    264 F.R.D. 622 (N.D. Cal. 2010) ....................................16, 17,18, 20

**Codes**

10 Cal. Code Regs., §2695.3 ..................................................................7

29 C.F.R. § 2560.503-1(h)(2)(iii) ..........................................................4

29 C.F.R. § 2560.503-1(j)(3) ...........................................................21, 24

29 C.F.R. § 2560.503-1(m)(8)(ii) ....................................................21, 24

29 C.F.R. § 2560.503-1(m)(8)(iv) .........................................................25

Employment Retirement Income and Security Act of 1974

    29 U.S.C. §1001 et seq. .......................................................................2

    29 U.S.C. §1024(b)(4) .....................................................................9, 23

    29 U.S.C. §1104(a)(1) ...............................................................6, 13, 15

    29 U.S.C. § 1132(a)(1)(B) ...................................................................8

    29 U.S.C. §1132(a)(3) .......................................................8, 9, 22, 23

    29 U.S.C. §1132(c)(1) ..........................................................................9

    29 U.S.C. §1133(2) ...............................................................................6

1

## I.    INTRODUCTION

Plaintiff Kenneth Klein brings this Joint Motion because Defendants The Northwestern Mutual Life Insurance Company ("Northwestern"), Standard Insurance Company ("Standard"), Foley & Lardner Long-Term Disability Plan (the "Plan"), and Foley & Lardner LLP ("Foley"), collectively and individually, have yet to provide any substantive responses and/or responsive documents at all to even one of the discovery requests Plaintiff served almost four months ago.  To date, Plaintiff has received nothing but objections to two sets of 25 interrogatories and 53 total document requests.  The Defendants, while making seriatim claims of privilege, have not yet even produced the mandatory privilege log required under Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure.[1]

The information and documents that Plaintiff seeks through his discovery requests are highly relevant to each of the following issues, which were outlined in Magistrate Stormes' previous Scheduling Order Regulating Discovery and Other Pre-Trial Disputes:

1)    Attorney-client communications and attorney work product relating to his claim for disability benefits under the Employment Retirement Income and Security Act of 1974 ("ERISA") (which Plaintiff contends should be provided both because they fall within the fiduciary exception to the attorney-client privilege and the work product doctrine, and because Defendants' waived the privilege through their disclosure of privileged documents);

2)    Defendants' structural conflict of interest; and

3)    Defendants' policies and procedures.  Doc. #33.

Plaintiff respectfully requests that the Court compel Defendants to provide information and/or documents responsive to Plaintiff's discovery requests, as set forth below.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Claim for Disability Benefits and Defendants' Denial

Plaintiff is a former litigation partner with the prominent national law firm, Defendant Foley & Lardner LLP ("Foley").  Complaint ¶14.  He was insured under a group long-term disability policy issued by Defendant Northwestern Mutual Life Insurance Company ("Northwestern") to Foley and insuring, *inter alia,* Foley partners. *Id.*, at ¶¶14-15.  Under the policy and California law[2] Northwestern promised, in

---

[1] During the meet and confer sessions between Plaintiff and Defendants over the last two months, Standard has agreed to produce some documents, but has not yet produced them.  Joint Decl., ¶¶3-5.  Moreover, Defendants consistently refused to provide a privilege log in response to the discovery requests until May 11, 2011, when Defendants' changed course and agreed to provide a privilege log by May 27, 2011.  Joint Decl., ¶ 6.

[2] *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1006-08 (9th Cir. 2004).

relevant part, to pay monthly benefits in the event that, due to injury or sickness, Plaintiff became unable to perform the material and substantial duties of his own occupation with reasonable continuity in the usual and customary manner. *Id.*, at ¶16.  Plaintiff alleges that by the time he became disabled, Northwestern had entered into an agreement with Standard Insurance Company ("Standard"), whereby Standard would administer claims for Northwestern.[3]  *Id.*, at ¶¶10-13.  The claims here are governed by the Employment Retirement Income and Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA").

Records contained in Plaintiff's claim file indicate that in April of 2008, Mr. Klein worked in Foley's then 50+ attorney San Diego office, where his office roles included being the Risk Management Partner, the Pro Bono Partner, the Head of the Appellate Practice Group, and a member of the Executive Committee.  Medical records contained in Plaintiff's claim filed indicate that in mid-April of 2008, after feeling unusually fatigued, Mr. Klein was referred to Scripps Green Hospital.  Allen D. Johnson, M.D., Plaintiff's treating cardiologist and the former Head, Division of Cardiovascular Disease of the Scripps Heart, Lung, and Vascular Center at Scripps Green, found that Mr. Klein had over 90% occlusion of the descending left main artery of his heart.

At that time according to medical records in his claim file Mr. Klein was 48 years old, had normal blood pressure, normal levels of cholesterol, and no relevant family history of heart disease,.  He did not smoke or drink; he exercised regularly.  On April 18, 2008, Mr. Klein had a quadruple bypass.  Complaint, ¶¶17-18.  Following surgery, after reviewing Mr. Klein's total absence of risk factors for coronary artery disease, other than stress, Dr. Johnson wrote a note contained in Plaintiff's claim file that "***it is completely necessary that [Plaintiff] no longer act in the capacity of a litigator given the acute and permanent situational stress associated with his responsibilities in his previous occupation.***"  He concluded that Klein's occupation as a litigation attorney created an unacceptable risk of a future fatal heart attack.  As records in Plaintiff claim file show, shortly thereafter, Mr. Klein left his occupation as a litigation partner and accepted a position as a law professor, a position which paid considerably less but involved a much lower level of occupational stress.

In early May of 2008, Mr. Klein applied for disability benefits.

---

[3] For purposes of the statement we refer to the combination of Standard and Northwestern as "NML".

-2-

1

### B.    The "Claims Handling" Prompting This Litigation

2   As shown in Plaintiff's claim file records, over the next eight months Standard repeatedly assured

3   Mr. Klein that its weekly investigation was "continuing" and that NML had insufficient "medical,

4   vocational, and financial information" to "make a decision."  This was a lie.

5   As records in the claim file show, in September of 2008, long *before* NML even consulted its own

6   retained medical doctor, *before* NML consulted its vocational specialist, *before* NML made any attempt to

7   collect (or read) any pertinent medical literature, *before* (according to NML) it even had complete medical

8   records on Mr. Klein (or even spoken to Dr. Johnson), claims handler Christie Schlunegger-Carriles wrote a

9   "Confidential Request for Group Legal Review" to the insurer's in-house counsel requesting a "pre-

10   litigation" review, ***asking whether the proposed decision to deny benefits was "defendable."*** Doc. #15-3

11   (Exh. A of Klein Declaration); Complaint, ¶20. Under the section entitled  "Legal Department Review –

12   Confidential Attorney Response" is written "per discussion with analyst" and signed by in-house counsel

13   Julie Bolt.  *Id.*  The memo also notes a discussion regarding the claim with an in-house "Attorney Du Jour,"

14   Tony Padilla on September 9, 2008.  *Id.*[4]

15   Unaware that while NML was *saying* the claim was still being adjusted, NML *actually* was trying to

16   document a denial position, Mr. Klein provided NML during the following several months with additional

17   information supporting his continued disability, including (1) a 2004 NIH report finding  "studies in people

18   with pre-existing coronary disease … consistently show a positive relationship between stress reactivity and

19   subsequent clinical outcomes . . . . Chronic stress sets the stage for, or increases susceptibility to, acute

20   events of coronary artery disease . . . . ;" and (2) a 2008 article in the *Journal of the American College of*

21   *Cardiology* finding, "There is … overwhelming evidence for … the deleterious effects of stress on the

22   heart."  The file, to this day, is devoid of any contrary medical evidence.

23   Yet, on January 26, 2009, NML denied Mr. Klein's claim for benefits, claiming that there was no

24   evidence that stress was a factor in the risk of future cardiac events.  Complaint, ¶35.  Ostensibly, the denial

25   was based entirely on the "review" of NML's retained doctor, Henry B. Garrison, M.D. (although the

26   requested discovery will determine whether Dr. Garrison's work was pursuant to and part of in-house

27

28   [4] However, in contravention of California law (10 Cal. Code Regs. §2695.3),neither the contents of nor even the existence of this discussion, is set forth anywhere else in the file.

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                                        Case No.  09 CV 2843 W (MDD)

1   attorney directives and pre-existing NML policies). The "integrity" of Dr. Garrison's analysis is self-

2   exposed in many ways, perhaps the most dramatic of which is that his rejection of the 2008 article (which

3   found "overwhelming evidence" of the linkage between stress and heart disease) rests on the argument that

4   research by a University of California, San Diego doctor is suspect if cited by a San Diego claimant. For

5   these reasons, Plaintiff believes and alleges that Defendants used a biased reviewing doctor knowing that

6   without regard to the merits, he would not support Plaintiff's claim that stress was an important factor in his

7   condition and disability – in other words, as the key piece of a strategy to paper a file with a "defendable"

8   basis for denying the claim. *Id.*, at ¶30.

9        As required by the policy and ERISA, Mr. Klein timely appealed Defendants' denial, and provided

10  additional materials (including, as contained in the claim file, yet more research studies) confirming that

11  stressful occupations increased the risk of a cardiac event in patients with coronary artery disease.

12  Complaint, ¶¶36-37. He also requested a variety of records including (i) records relied upon in generating

13  the denial; (ii) "records *submitted, considered or generated* in the course of making the denial" regardless of

14  whether such documents, record or other information; and (iii) all of NML's applicable policies and

15  procedures. *Id.*, at ¶37. Defendants were required to provide such documents to the Plaintiff under the

16  ERISA regulations. 29 C.F.R. §2560.503-1(h)(2)(iii), (m)(8); Complaint, ¶38.

17       Not a single claims procedure was provided. *Id.*, at ¶39. Defendants provided Plaintiff what they

18  purported to be his entire claim file. However, they withheld from Plaintiff all communications they

19  claimed were protected by the attorney-client privilege and work product doctrine, including the

20  "Confidential Request for Group Legal Review."[5] *Id.*, at ¶¶40-42. This refusal was wrongful, as there is no

21  attorney-client privilege or work product protection for documents generated during an ERISA claim. "As

22  applied in the ERISA context, . . . an employer acting in the capacity of ERISA fiduciary is disabled from

23  asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *U.S. v.*

24  *Mett*, 178 F. 3d 1058, 1064 (9th Cir. 1999); *see also Solis v. The Food Employers Labor Relations Ass'n, --*

25  *F.3d --* , 2011 WL 1663597 at * (4th Cir. 2011)(citing *Mett* and requiring the disclosure of Board of Trustees

26

27

28

[5] This document had been provided to the Plaintiff when a partial version of his file was first produced to him prior to his claim being denied. However, when the Plaintiff made a formal request for his entire file, the document was removed from the file before it was produced to him.

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                     Case No.  09 CV 2843 W (MDD)

meeting minutes, handwritten notes distributed and taken during the meetings, and correspondence concerning investments made by pension and health funds).  As the Ninth Circuit has explained:

> When an attorney advises an ERISA trustee regarding the management of the fund, the ultimate clients of the attorney are as much the beneficiaries of the plan as the trustees.  Not surprisingly, federal courts that have considered the issue have uniformly [held that no attorney-client privilege exists in the ERISA context].  (Citations omitted.).

*Proceedings Grand Jury No. 97-11-8*, 162 F.3d 554, 556-557 (9th Cir. 1998); *see also, Bland v. Fitatallis North Am. Inc.,* 401 F. 3d 779, 787-88 (7th Cir. 2005); *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47-53 (D. Mass. 2007)(attorney-client privilege does not protect communications with claims administrator's personnel); *Everett v. U.S.Air Group, Inc.,* 165 F.R.D. 1, 5 (D.D.C. 1995) (lawyers acting on behalf of an employee benefits plan "may not invoke [the work product privilege] to shield their attorney work product from their own ultimate clients, the plan beneficiaries.").  Despite this clear authority, Defendants refused to produce any attorney-client documents in response to repeated requests from the Plaintiff.

On July 6, 2009, Defendants denied Plaintiff's appeal.  Complaint, ¶44.  The stated basis for denial was, "there have been no definitive studies proving that emotional stress of the kind experienced by a litigation attorney necessarily causes the development of coronary artery disease," even though research articles submitted by Plaintiff and contained in the claim file show that it is widely accepted that occupational stress is a risk factor for future cardiac events.  Equally importantly, nothing in the policy requires a definitive study.  On August 10, 2009, Plaintiff sent a letter to Foley requesting that, in its role as co-plan administrator, it provide copies to Plaintiff of all communications between Defendants' claims handlers and their attorneys relating to Plaintiff's claim and the documents created by these attorneys.  Complaint, ¶45.  By letter dated September 9, 2009, Foley declined to provide the documents, stating that the insurers continued to maintain that they were privileged.

### C.    Plaintiff's Allegations Regarding Defendants' Secret Attorney Group

As alluded to above, the Defendants produced all or some of the claims file on two occasions – first, a partial production in December 15, 2008 and then a purported complete production in March 26, 2009.  Doc. #15-2 (Klein Decl. at ¶¶2-4).  The core of the present discovery dispute arises because of documents that were in the first production, but expunged from the second.  *Id.*  In particular, the September 2008 "Confidential Request for Group Legal Review" mentioned above had been provided to the Plaintiff when a

1  partial version of his file was first produced to him prior to his claim being denied. Doc. #15-2 (Klein Decl.

2  at ¶¶2-3).  This document exposed the otherwise secret strategy of NML of utilizing an internal attorney

3  group simultaneously to deny claims without regard to the merits and to try to hide the pre-determined

4  intention to deny from prying eyes.  However, when Plaintiff made a formal request for his entire file, the

5  document was removed from the file before it was produced to him.  *Id.* (Klein Decl. at ¶4).  In violation of

6  their clear obligations under ERISA to produce communications with counsel regarding claim

7  administration, the insurers repeatedly refused Plaintiff's requests for such documents.  *Id.* (Klein Decl. at

8  ¶5); Complaint, ¶43-46.

9       Plaintiff alleges that the suggestion that these documents were created in connection with a "pre-

10  litigation" review is an obvious and frivolous effort to justify the hiding of these documents. The "pre-

11  litigation" review was done 4 months before the claim was initially denied.  Plaintiff alleges that it could not

12  be a "pre-litigation" review unless NML(1) knew NML would deny all or virtually all claims, without regard

13  to merit; and (2)  either assumed that all insureds sue them upon denials or they knew that this denial was

14  improper. Complaint, ¶28.

15       Plaintiff further alleges that his claim was handled in accordance with a deliberate scheme adopted by

16  Northwestern and Standard to fraudulently subvert ERISA's fiduciary requirements.  Complaint, ¶¶20-28,

17  62.  "ERISA imposes higher-than-marketplace quality standards on insurers." *Metropolitan Life Ins. Co. v.*

18  *Glenn*, __ U.S. __, 128 S.Ct. 2343, 2350 (2008).  It further requires that an insurer acting as a claims

19  administrator and fiduciary "discharge [its] duties . . . solely in the interests of the participants and

20  beneficiaries" of the policy at hand.  29 U.S.C. §1104(a)(1).  ERISA also requires that an insurer acting as

21  claims administrator conduct a "full and fair review" of claims that it denies.  29 U.S.C. §1133(2).  To that

22  end, the ERISA regulations require a claim administrator to provide "reasonable access to, and copies of, *all*

23  *documents, records, and other information* relevant to the claimant's claim for benefits," including (i) records

24  relied upon in generating its denial; (ii) records submitted, considered, or generated in the course of making

25  its denial, regardless of whether "such document, record, or other information was relied upon in making the

26  benefit determination"; (iii) claims procedures showing who the claim according to the policy provisions,

27  consistent with its handling of the claims of similarly situated claimants; and (iv) any policy statements or

28  guidelines relating to the claim, regardless of whether it relied upon such advice or statement in denying the

1   claim. 29 C.F.R. §2560.503-1(h)(2)(iii), (m)(8).  In addition, California regulations require that all substantial

2   activity be documented in the file.   10 Cal. Code Regs., §2695.3.  Certainly, communications with counsel

3   regarding how a claim should be handled is a significant activity.[6]

4        Plaintiff alleges that the insurers here deliberately and systematically hide the involvement of counsel

5   from insureds.  Complaint, ¶¶20-28, 62-63.  Plaintiff also alleges that Defendants employ an "Attorney Du

6   Jour" whom Plaintiff believes are counsel available for consultation with the claims personnel on a daily

7   (i.e. "du jour") basis.  Doc. #15-3 (Klein Decl., Exh. A).  They also employ a group legal department, which

8   Plaintiff alleges consults with and assists the claims department in denying claims.  Complaint, ¶¶21-22.

9   There is, of course, nothing generically improper about the mere consultation with counsel.  However, in

10  these circumstances, the law requires the disclosure of all attorney involvement.  Yet, that involvement here

11  is hidden from claimants and all evidence of counsel's involvement is either not recorded in the file that is

12  ultimately provided to the insured or deliberately removed from the file.   Thus, unless an insured

13  serendipitously comes upon a reference to counsel, the involvement of counsel in the claims process is

14  invisible to the normal claimant.  The file has, instead been cleansed of the involvement of the attorneys,

15  thereby deliberately withholding an essential part of the claim process, which the insurers are required to

16  disclose.  Complaint, ¶¶24-27.

17       The purposes of the insurers' actions are patent.  By claiming that the communications are privileged,

18  Defendants can be free to bias the claims process without fear of this information being discovered by

19  insureds or the courts.  Complaint, ¶25.  The anomaly of ERISA is that, while insurers have fiduciary

20  obligations to insureds to process their claims fairly and in good faith, they are entitled to include

21  discretionary clauses in their policies.  *Glenn*, 128 S.Ct. at 2350; *Firestone Tire & Rubber Co. v. Bruch*, 489

22  U.S. 101, 111, 113 (1989).  Insurers use such clauses, which now appear in virtually every policy, to

23  maintain a denial unless the insured can prove that the insurer acted in an arbitrary and capricious manner.

24  Insurers routinely claim that their claim denial must be upheld if there is any reasonable basis to do so.

25  *Jordan v. Northrop Grumman Corporation Welfare Benefit Plan*, 370 F.3d 869 (9th Cir.2004) *overruled by*

26  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 966-67 (9th Cir. 2006)(en banc); *Montour v. Hartford*

27

28  [6] Notwithstanding ERISA's broad preemption provisions, state laws which "regulate insurance" are still binding on insurers operating ERISA plans.  These California regulations clearly "regulate insurance."  *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342 (2003); *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 374 (1998).

1   *Life & Acc. Ins. Co.*, 588 F.3d 623, 629-30 (9th Cir. 2009)(noting that court improperly adopted insurer's

2   reliance on *Jordan* despite its conflict of interest).[7]   Thus, if the denial is determined by the insurer to be

3   simply "defendable," it can hope to sustain its denial under an arbitrary and capricious test.

4         However, denying claims where they are merely "defendable" instead of whether the claims should

5   be fairly paid is a clear violation of ERISA.  Plaintiff alleges that the insurer defendants have a well-oiled

6   machine that does exactly that on a systematic basis.  Plaintiff alleges that the Defendant insurers have

7   sought to take advantage of the discretionary clause by setting up a secret group of attorneys and legal

8   personnel who operate invisibly behind the scenes and whose job is to review, guide, provide legal advice,

9   prepare and modify documents and direct claims personnel in a biased manner such that Defendants can and

10  do implement a practice of denying claims on grounds which are merely "defendable"  - i.e.  barely sufficient

11  to defend under an arbitrary and capricious standard. Complaint at ¶¶21-29, 62-63.

12        Thus, despite the high fiduciary standard imposed on them, the insurers here have retooled their

13  claims operation such that claims are not paid or denied in accordance with the insurers' obligations to

14  perform a "full and fair" review.  Instead, Plaintiff alleges that they are paid or denied depending on whether

15  they believe the claim will later be "defendable" in court. *Id*. Plaintiff alleges that counsel are secretly

16  engaged in assisting the claim operation on what is necessary to pass the minimal muster under an arbitrary

17  and capricious standard before a claim is denied.  By hiding this process from insureds, the insurers are able

18  to inhibit, if not block entirely, an insured's ability to show that the claims decision was improper.  *Id*.

19        **D.      Defendants' Waiver of the Attorney-Client Privilege**

20        Any claim by Defendants' that the attorney-client communications are privileged has long been

21  waived, as Defendants have made no attempt to claw back such communications *for over a year* after those

22  communications were made public.  On January 22, 2010, Defendants filed a motion to dismiss two of

23  Plaintiff's three causes of action.[8]  Doc. #13.  In response, on February 12, 2010, Plaintiff filed his

24

25  _____

    [7] This test is now tempered or eliminated where the entity deciding the claim has a conflict of interest.  *Glenn*, 128 S.Ct. at
    2350-52; *Montour*, 588 F.3d at 629-30; *Abatie*, 458 F.3d at 965-69 (9th Cir. 2006)(en banc).

26  [8] Plaintiff's First Cause of Action seeks the recovery of disability benefits that have been wrongfully withheld from him by
    Defendants, pursuant to ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B).  Plaintiff's Second Cause of Action

27  seeks appropriate equitable and injunctive relief, including but not limited to the removal of Standard and Northwestern
    Mutual as a fiduciaries and the disclosure of improperly withheld documents, pursuant to ERISA § 502(a)(3), codified at 29

28  U.S.C. § 1132(a)(3).  Plaintiff alleges that Defendants Standard and Northwestern Mutual violated their fiduciary duties by,
    inter alia:  1) maintaining a secret group of attorneys and legal personnel who operate invisibly behind the scenes and

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF          Case No.  09 CV 2843 W (MDD)
DISCOVERY DISPUTE

1  Opposition, which included the "Confidential Request for Legal Review".  Doc. #15-3 (Exh. A of the Klein

2  Decl.).  Yet to date, Defendants have *never* requested the return of the "Confidential Request for Legal

3  Review," even though it has been over 14 months since Plaintiff disclosed the document.[9]

4          On September 15, 2010, the Court denied Defendants' Motion to Dismiss and allowed all three

5  causes of action to proceed.  Doc. #22.  In allowing the Second Cause of Action to stand, the Court noted

6  that Plaintiff "pled a pattern and practice of breaches of fiduciary duty and seeks equitable relief under

7  section 1132(a)(3) that is not available under subsection (a)(1)(B), including the removal of Defendants as

8  fiduciaries and disclosure of improperly withheld documents."  *Id.*, 5:12-14.  The Third Cause of Action

9  was allowed to proceed against Foley under 29 U.S.C. §1024(b)(4), with the Court noting that Plaintiff's

10 requests for documents related to claims procedures, policy statements, and guidelines "are consistent" with

11 documents required to be produced under section1024, because they "allow plan participants to know what

12 benefits they may be entitled to, what circumstances may preclude them from obtaining benefits, and what

13 procedures they must follow to obtain benefits."  *Id.*, 7:10-16.

14         On January 26, 2011, Plaintiff served his Initial Disclosures, which included the attorney-client

15 communications.  Kim Decl., Exh. A. That same day, Defendants served their own Initial Disclosures

16 containing a privilege log of 4 attorney-client communications; however, the privilege log was woefully

17 inadequate, failing to identify the parties involved in each communication or the subject of their

18 communication.  Kim Decl., Exh. B.  Despite receiving notice for a second time that Plaintiff possessed

19 attorney-client communications, Defendant made no attempt to request the return of the communications.

20     **E.     The Discovery Requests and the Parties' Meet and Confer Efforts**

21         On January 21, 2011, Plaintiff personally served the following discovery requests:

22

23

24  whose job is to assist claims personnel in a biased manner such that Defendants can and do implement a practice of denying claims on grounds which are merely "defendable" – i.e. barely sufficient to defend under an arbitrary and capricious

25  standard; and 2) employing medical personnel which they know, train and direct to review claims in a biased manner in order to justify the denial of claims under the "defendable" standard.  Complaint ¶¶21-29.  Third, the Complaint seeks the

26  recovery of civil fines pursuant to ERISA §1132(c)(1), codified at 29 U.S.C. §1132(c)(1), for Defendants' failure to provide documents covered by 29 U.S.C. §1024(b)(4) and 29 C.F.R. §2560.503-1(h)(2)(iii).

27  [9] Arguably, Defendants had notice that it disclosed attorney-client communications and work product as early as November

28  2009, when Plaintiff filed his Complaint and alleged that NWL routed Plaintiff's claim for a "pre-litigation" "Group Legal Review" to determine whether a decision to deny benefits was "defendable".  Complaint, ¶20.

-9-

a)  Plaintiff's Request for Production of Documents to Defendants the Northwestern Mutual Life Insurance Company and Standard Insurance Company, Set One ("Northwestern/Standard RFP"), containing 40 document requests;

b)  Plaintiff's Request for Production of Documents to Defendants the Northwestern Mutual Life Insurance Company and Standard Insurance Company, and the Foley & Lardner LLP Long-Term Disability Plan, Set One ("All Defendants RFP"), containing 13 document requests;

c)  Plaintiff's Interrogatories to Defendant the Northwestern Mutual Life Insurance Company, Set One ("Northwestern Interrogatories"), containing 25 interrogatories; and

d)  Plaintiff's Interrogatories to Defendant Standard Insurance Company, Set One ("Standard Interrogatories"), containing 25 interrogatories.  Joint Decl., ¶1.[10]

On February 22, 2011, Defendants served responses to Plaintiff's discovery requests, consisting entirely of objections.  Joint Decl., ¶2; Separate Statement.  *To date, Plaintiff has yet to receive a single response or document responsive to the discovery requests.*

Defendants' have asserted the attorney-client privilege and the work product doctrine as a objection to numerous discovery requests, but to date have refused to provide a privilege log that adequately identifies privileged documents responsive to Plaintiff's discovery requests.  Defendants initially asserted that a privilege log submitted with their Initial Disclosures was sufficient; it further contended that Defendants would only provide a privilege log listing the privileged documents responsive to the discovery requests, if told to do so by the Court.  Yet two months after the parties began meet and confer session, Defendants changed course and asserted on May 11 that it would provide a privilege log after all.  Joint Decl. ¶¶3, 6[11].  The privilege log submitted with Defendants' Initial Disclosures was wholly inadequate; it only lists four alleged "attorney-client communications", fails to identify the parties who created or received the communications, and fails to meaningfully describe the subject of the communication.  Kim Decl., Exh. B.

For over two months since March 14, 2011, Plaintiff has made a good faith effort to meet and confer with Defendants' counsel in accordance with Local Rule 26.1 and the court's Civil Case Procedures and Chambers Rules.  Joint Decl., ¶¶3-4.  Despite these efforts, Defendants continue to contest and object to the

---

[10] The Northwestern Interrogatories and the Standard Interrogatories contain identical interrogatories, thus references to an Interrogatory in this brief will be to the identical Interrogatory in both sets.

[11] Defendants current counsel, Carol B. Lewis of Meserve, Mumper & Hughes LLP, declined to include the position of Defendants' previous counsel regarding the preparation of a privilege log in the parties' Joint Declaration for this Joint Motion.  Also, because of the lateness of the change in position, Plaintiff will not have the promised privilege log or be in a position to comment either on its adequacy or implications by the time of the filing of this Brief; however, NML's conduct in discovery to date is not encouraging in this regard.

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                          Case No.  09 CV 2843 W (MDD)

1  majority of Plaintiff's discovery requests (as listed in the Separate Statement), making this Joint Motion

2  necessary.  Joint Decl., ¶¶3-5.

3  **III.    ARGUMENT**

4      **A.    Defendants Should Be Compelled to Provide Information and Documents Relating to
             Attorney-Client Communications Made During the Claims Process**

5

6          **1.    The Fiduciary Exception Applies to the Communications Made During the
                   Course of Claims Administration**

7          Plaintiff contends that Defendants are required to produce documents (including electronic data found

8  in backup drives) responsive to Request Nos. 2-4 (All Defendants RFP), which seek all documents relating to

9  communications between Defendants regarding Plaintiff's claim, including what Defendants claim are

10 attorney-client communications and work product documents.  Plaintiff is entitled to such documents,

11 notwithstanding any claim of attorney-client privilege, due to the "fiduciary exception" to the privilege

12 recognized under ERISA, because such communications clearly related to Defendants' administration of

13 Plaintiff's claim well before he initiated this lawsuit.  While communications between attorneys and their

14 clients are privileged, under ERISA an administrator owes a fiduciary duty to their beneficiaries that

15 overrides the attorney-client privilege "on matters of plan administration."  *U.S. v. Mett*, 178 F.3d 1058, 1064

16 (9th Cir. 1999).  This exception is based on the notion that "as a representative for the beneficiaries of the

17 trust which he is administering, the trustee is not the real client in the sense that he is personally being

18 served."  *Id.* at 1063.  Because the trust beneficiaries are the real clients, then they must be entitled to the

19 disclosure of the communications between the trustee and the trustee's attorneys.  *Id.*

20         In determining if an administrator is acting in a fiduciary capacity, the Ninth Circuit stated:

21             On the one hand, where an ERISA trustee seeks an attorney's advice *on a matter of plan
               administration* and where the advice clearly does not implicate the trustee in any personal

22             capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries.
               On the other hand, where a plan fiduciary *retains counsel* in order to defend herself against the

23             plan beneficiaries . . . , the attorney-client privilege remains intact.

24 *Mett*, 178 F.3d at 1064.  In *Mett*, the trustees of a pension plan sought legal advice from the plan's *outside*

25 *counsel* regarding potential *criminal and civil sanctions* for withdrawing large amounts from the plan without

26 adequate security and without repayment, and regarding the trustees' failure to report the withdrawals.  The

27 court held that the fiduciary exception did not apply to the memorandum prepared by the outside counsel.  *Id.*

28 In contrast, in *Allen v. Honeywell Retirement Earnings Plan*, 698 F.Supp. 2d 1197, 1202-03 (D. Ariz. 2010)

-11-

1    the court held that the fiduciary exception applied to communications generated during the processing of an

2    administrative claim, noting that if the plan administrator needed confidential advice concerning possible

3    litigation by the plan beneficiaries, it should have retained separate counsel who did not assist in the function

4    of claim administration.  Interpreting *Mett*, the *Allen* court held that the parties' interests actually diverged at

5    the point when defendant made a final administrative decision, reasoning that if the parties' interests had

6    diverged prior to that, defendants should not have engaged in the administrative process.  *Id.* at 1203.

7        As a result, courts have repeatedly held that for non-pension <u>welfare plans</u> like the disability plan

8    here, the fiduciary exception applies to legal advice sought by a fiduciary during the claims administration

9    process *up until the fiduciary's final denial.  See, e.g., Gundersen v. Metropolitan Life Ins. Co.*, 2011 WL

10   487755 (D. Utah Feb. 7 2011); *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45, 47-48 (D.Mass 2007)

11   ("The opportunity to review material relating to a claim determination is critical to a full and fair review . . . .

12   This goal would be frustrated if insurers were able to limit access to such information through a claim of

13   attorney-client privilege"); *Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK026458*, 2006 WL

14   4690828 *2-3 (S.D. Cal. July 11, 2006); *Asuncion v. Metro. Life Ins. Co*., 493 F. Supp. 2d 716 (S.D.N.Y.

15   2007) (applying fiduciary exception and ordering production of documents relating to investigation of

16   insured's claim); *Black v. Pitney Bowes*, 2006 U.S. Dist. LEXIS 92263, *12 (S.D.N.Y. Dec. 21, 2006)

17   (documents relating to claim administration but not pending litigation were not privileged because fiduciary

18   exception applies); *Shields v. UnumProvident Corp*., 2007 U.S.Dist. LEXIS 17836 (S.D.Ohio March 9,

19   2007) (overruling both an attorney-client privilege objection and a work product doctrine objection).

20       In *Gundersen*, the court held that the fiduciary exception applied to a legal memo written by an in-

21   house counsel two weeks before the insurer-fiduciary made its decision on the insured-beneficiary's appeal.

22   In so ruling, the court stated that the insurer had a fiduciary duty to make a correct decision on the appeal:

> The disputed August 4th file memo was written two weeks before the decision on Gundersen's appeal. MetLife had not finally acted at the time the advice was given. While it can be said that this advice was sought to protect the administrator against liability, *it was fundamental in the appeal determination and was given to ensure that the plan did the right thing in its administrative decision. To allow MetLife to claim privilege would bar the claimant and other beneficiaries from any discovery of legal advice given on plan claim decisions*.

*Gundersen*, 2011 WL 487755 at *11 (emphasis added)(citing *Geissal v. Moore Medical Corp.*,192 F.R.D.

620, 625 (E.D. Mo. 2000)).  Similarly, in *Neathery*, *supra*, the Southern District held that communications

Case No.  09 CV 2843 W (MDD)

1    with the insurer's counsel relating to the plaintiff's internal appeal amounted to "pre-decisional advice about

2    the administration of the plan" and that the "beneficiary is entitled to know what legal opinions were given

3    concerning the investigation and determination of Plaintiff's appeal." *Id.* at *2.

4        Plaintiff anticipates that Defendants will cite the Third Circuit's decision in *Wachtel v. Health Net,*

5    *Inc.*, 482 F.3d 225 (3rd Cir. 2007) for its argument that the fiduciary exception is inapplicable to insurers,

6    because the insurer is the sole client of its retained counsel. Nor surprisingly, *Wachtel* is a minority view that

7    has been rejected by courts outside of the Third Circuit. *See, e.g., Buzzanga v. Life Insurance Company of*

8    *North America*, 2010 WL 1292162 *3 (E.D. Mo. April 5, 2010)(declining to adopt *Wachtel* and reasoning

9    that advice from counsel was included in the type of information that an ERISA fiduciary was obligated to

10   provide beneficiaries consistent with its fiduciary obligation pursuant to 29 U.S.C. §1104(a)(1)); *Smith*, 245

11   F.R.D. at 51 (stating "the *Wachtel* court pointed to nothing in the statute or in its implementing regulations

12   relating to disclosure that would exempt insurance companies from any of ERISA's disclosure requirements

13   or otherwise distinguishes between types of fiduciaries for purposes of disclosure"). Indeed, allowing

14   *Wachtel* to control in this case would contradict the Supreme Court's holding in *Glenn* that "ERISA imposes

15   higher-than-marketplace quality standards on insurers", 554 U.S. at 115, and ERISA's requirement that that

16   an insurer acting as a claims administrator and fiduciary "discharge [its] duties . . . solely in the interests of

17   the participants and beneficiaries" of the policy at hand. 29 U.S.C. §1104(a)(1).

18       Here, it is clear that the fiduciary exception applies to all attorney-client communications regarding

19   Plaintiff's claim before Defendants' July 6, 2009 final denial. It is undisputed that Defendants began seeking

20   advice regarding Plaintiff's claim as early as September 2008, *four months* before Defendants' initial denial

21   of benefits and *over nine months* before Defendants' final denial. Moreover, it is clear that the September

22   2008 "Confidential Request for Group Legal Review" was solicited in connection with Plaintiff's pending

23   claim. As is clear from this memo, with its discussion of a "Attorney-du-Jour", Defendants' attorney-client

24   communications regarding Plaintiff's claim were not only in writing, they were also conducted orally as a

25   matter of course. As a result, Plaintiff requests that Defendants be compelled to produce all documents

26   responsive to Request Nos. 2-4 (including all attorney-client communications prior to the July 6, 2009 final

27   denial), and that the Court order all personnel involved in handling Plaintiff's claim to provide deposition

28   testimony regarding any attorney-client communications relating to Plaintiff's claim prior to the final denial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    The Attorney-Client Communications Must Be Produced Because Of Defendants' Waiver

Even assuming *arguendo* that the fiduciary exception did not apply, Defendants must provide attorney-client communications responsive to Nos. 2-4 of the All Defendants RFP because they have waived the privilege through their disclosure of attorney-client communications to Plaintiff prior to litigation.  Rule 502(b) of the Federal Rules of Evidence states that the disclosure of privileged material "in a Federal proceeding or to a Federal office or agency" acts as a waiver of the attorney-client privilege and work product protection, unless the disclosing party demonstrates it took "reasonable steps" to prevent disclosure and correct the erroneous disclosure, including complying with Federal Rule of Civil Procedure 26(b)(5)(B) when appropriate.[12]  The disclosing party has the burden of proof to show that "reasonable steps" were taken. *Callan v. Christian Audigier, Inc.*, 263 F.R.D. 564, 566 (C.D. Cal. 2009)(holding disclosing party failed to demonstrate reasonable steps to prevent disclosure of privileged material). However, if the disclosing party fails to take reasonable steps to prevent and correct the disclosure, courts have held that the disclosures waive the privilege.  *United States v. De La Jara*, 973 F.2d 746, 749-750 (9th Cir. 1992) (attorney-client privilege waived by defendant's failure to act within 6 months after police seized privileged letter from his attorney).

If the disclosing party has shown that it has complied with Rule 502(b), courts consider the following factors to determine if the disclosing party waived the privilege:  1) the reasonableness of precautions taken to prevent inadvertent production; 2) delay in discovery and attempt to rectify the error; 3) the scope of discovery demand (how much information was demanded); 4) number and extent of inadvertent disclosures; 5) whether justice is served by relieving the producing party of its error.  *Rhoads Industries, Inc. v. Building Materials Corp. of Amer.*, 254 F.R.D. 216, 226 (E.D. Pa. 2008); *United States ex rel Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001) (decided before Rule 502(b) instituted).

Here, even though it is debatable whether Defendants disclosed privileged communications to Plaintiff in a federal proceeding (as the documents were disclosed well before Plaintiff filed suit) it is clear that Defendants failed to take any reasonable steps to prevent or correct its disclosure of the privileged

---

[12] Federal Rule of Civil Procedure 26(b) provides that when "information *produced in discovery* is subject to a claim of privilege or of protection as trial preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved." (Emphasis added).

-14-

1   documents.  To date, *Defendants have never requested the return of any privileged documents*, even though

2   it was aware as early as February 12, 2010 that Plaintiff received privileged documents during the claims

3   process (which Plaintiff contends were and are subject to the fiduciary exception under ERISA). Doc. #15-3

4   (Exh. A of Klein Decl.).  Defendants waited *almost a full year* after that date before providing a privilege log

5   with its Initial Disclosures, listing 4 privileged documents in its claim file, yet they still never requested the

6   return of any allegedly privileged documents.  Kim Decl., Exh. B.

7   Moreover, the Court should find that a waiver occurred under the multi-factor test under *Rhoads*

8   *Industries*.  For the first factor, Defendants have failed to list any precautions taken to prevent the error.  The

9   second factor favors Plaintiff, as Defendants have clearly delayed in their discovery of its error and have

10  made no effort to correct its error to date.  The third and fourth factors also favor Plaintiff, because

11  Defendants disclosed the privileged communications *before any lawsuit was filed* and before Plaintiff's claim

12  was denied, and there are only four communications listed in Defendants' privilege log submitted with their

13  Initial Disclosures.  Kim Decl., Exh. B.  Finally, justice is not served by relieving the Defendants of their

14  error.   The request for a "pre-litigation" review to determine whether the proposed decision to deny benefits

15  was "defendable" flies in the face of the fiduciary duty that Defendants have toward Plaintiff to "discharge

16  [their] duties . . . solely in the interests of the participants and beneficiaries." 29 U.S.C. §1104(a)(1).  To

17  pretend that the communications do not exist would be unjust and not serve any interest of fairness.  For

18  these reasons, Plaintiff requests that the Court hold that Defendants waived their right to assert the attorney-

19  client privilege or work product protection over any communication made regarding Plaintiff's claim.

**B.   Defendants Should Be Compelled to Provide Information and Documents Relating to the Issue of Defendants' Structural Conflict of Interest**

20

21  In addition to attorney-client communications generated during the course of Plaintiff's claim,

22  Defendants' should be compelled to provide information or evidence responsive to Plaintiff's discovery

23  requests relating to Defendants' structural conflict of interest.  In *Abatie v. Alta Health Ins. Co,* 458 F.3d 966,

24  970 (9th Cir. 2006)(en banc), the Ninth Circuit expressly held that evidence outside of the administrative

25  record is permitted in ERISA actions to aid the court in determining the "nature, extent and effect" of an

26  insurer's or administrator's structural (inherent) conflict of interest on the claims decision.  Similarly, in

27  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007), the Ninth Circuit again held that a

28

1   court may order discovery of evidence relating to an administrator's conflict of interest.

2        Since *Abatie* and *Welch*, numerous courts in the Ninth Circuit, including the this District have ordered

3   discovery relating to an insurer/administrator's conflict of interest.  *See, e.g., Zewdu v. Citigroup Long Term*

4   *Disability Plan*, 264 F.R.D. 622, 628-29 (N.D. Cal. 2010); *Sullivan v. Deutsche Bank Americas Holding*

5   *Corp.*, 2010 WL 391821, *2 (S.D. Cal. Jan. 2, 2010); *Dine v. Metro. Life Ins.*, 255 F.R.D. 534, 534-35 (C.D.

6   Cal. 2009) (noting that MetLife was compelled to produce materials used to train those employees involved

7   in the evaluation of plaintiff's claim, and claims handling manuals, guidelines and policies employed by

8   defendant in evaluating plaintiff's claim for disability benefits); *Whelan v. Standard Ins. Co.*, 2009 WL

9   1457748, *2-3 (C.D. Cal. Apr. 14, 2009); *Wilcox v. Wells Fargo & Co. Long-Term Disability Plan*, 2009

10   WL 57053, *3 (D. Ariz. Jan. 8, 2009); *Walker v. Metropolitan Life Ins. Co.,* 585 F.Supp.2d 1167, 1175 (N.D.

11   Cal. 2008); *McCurdy v. Metro. Life Ins. Co.*, 2007 WL 915177, *5 (E.D. Cal. Mar. 23, 2007)(permitting

12   discovery of Defendant's "claim and procedural manuals, guidelines, bulletins, and memoranda, describing

13   or pertaining to the handling of disability claims"); *Harper v. Unum Life Ins. Co. of Amer.*, 3007 WL

14   1792004, *5 (E.D. Cal. Jun. 19, 2007).

15        As a result, Defendants should be compelled to provide responses and/or documents in response to

16   the following discovery requests, which are organized by category below.

### 1.    Information and Documents Re: Number of Claims Reviewed by Insurers, Individuals and Vendors

Plaintiff seeks the following information and documents regarding the number of claims reviewed by each of the Defendants, their employees, and their medical reviewers:

- Interrogatory Nos. 1, 6 and 7 (Standard Interrogatories and Northwestern Interrogatories), which seek the names, job titles and duties of attorneys in Defendants' Group Legal and/Legal Department who worked with the claims department on group long-term disability claims from January 1, 2006 to the present.

- Interrogatory Nos. 2 and 3 (Standard Interrogatories & Northwestern Interrogatories), which seek the number of times the Group Legal and/or Legal Department was consulted by Defendant' claims departments for group long-term disability from January 1, 2006 to the present, and how many times an opinion was provided by the Group Legal and/or Legal Department.

- Interrogatory 16 through 18 (Standard Interrogatories & Northwestern Interrogatories), which seek the number of times peer reviewer Henry B. Garrison, M.D. provided peer reviews retained by Defendants for group long-term disability claims from January 1, 2006 to the present, and how many times Defendants rejected, accepted or denied a group long-term disability claim after a peer review from Dr. Garrison.

- Interrogatory Nos. 20-22 (Standard Interrogatories & Northwestern Interrogatories), which seek the number of group long-term disability claims involving a cardiac condition where occupational stress was a factor from January 1, 2006 to the present for each calendar year, and the number of claims that were rejected, denied, accepted or granted.

- Request No. 13 (Northwestern/Standard RFP), which seeks the documents showing the frequency in which attorneys from Defendants' Group Legal and/or Legal Department attorneys are made available for group long-term disability claims, and Request No. 17 (Northwestern/Standard RFP), which seeks documents relating to documents created by attorneys in Defendants' Group Legal and/or Legal Department relating to the involvement in group long-term disability claims from January 1, 2005 to the present.

- Request No. 24 (Northwestern/Standard RFP), which seeks the peer review reports that Dr. Garrison prepared from January 1, 2006 to the present regarding claims for disability benefits.

- Request Nos. 38 through 40 (Northwestern/Standard RFP), which seek the claim files (including the peer review reports) of group long-term disability claims involving a cardiac condition where occupational stress was a factor from January 1, 2006 to the present, as identified in Interrogatory Nos. 20-22.

The information and/or documents sought by these discovery requests are relevant to the issue of the Defendants' conflict of interest, as courts have held that the number of times an insurer/administrator uses a vendor or reviewer for claims is discoverable evidence of a conflict of evidence.  In *Zewdu*, the court ordered the defendant to provide the number of disability claims reviewed by medical reviewers. 264 F.R.D. at 628-29; *see also Walker,* 585 F.Supp.2d at 1175 (ordering statistical information regarding NMR physician reviews relied upon by MetLife in making its disability claim determinations).  Moreover, in *Wilcox*, the court not only ordered disclosure defendant's approval and termination rates for LTD disability claims, it also ordered the disclosure of the number of LTD disability claims relating to the insured's particular medical issue of fibromyalgia.  2009 WL 57053, at *3.  Furthermore, in *Whalen*, the court ordered Defendant Standard to produce 25 reports from each peer reviewer it relied upon, holding that because "Standard is both the claims administrator and the funding source of the subject ERISA Plan . . . . [plaintiff] is entitled to discover evidence showing that Standard's admitted conflict influenced its handling of his claim".  2009 WL 1457748 at *2.  *Whalen* also held that Standard could not claim that producing such information would be burdensome, as Standard's reports were available electronically. *Id.* at *3.  Here, Standard has made *no* showing of how many reports or claim files are responsive to the above requests, and has failed to even articulate what efforts it took to locate responsive information or documents.  Therefore, any contention that complying with these requests is completely unsubstantiated.

For Request Nos. 13, 24, and 38-40, Plaintiff is willing to enter into a protective order for the

-17-

production of the peer review reports and the claim files at issue, and allow for the redaction of personal identifying information, to protect the privacy rights of other claimants. *See id.* (holding that the privacy rights of other claimants could be addressed through a protective order and redaction). In the event that the Court does not allow the production of all of the peer review reports and claim files sought, Plaintiff requests that a statistically significant sample be provided. *Id.*

### 2. Documents Relating to the Performance Evaluations of the Employees, Physician Reviewers of Defendants

Plaintiff has requested documents relating to the performance evaluations of Defendants' employees and physician consultants who administered Plaintiff's claim:

- Request Nos. 1 and 2 (Northwestern/Standard RFP), which seek documents relating to the personnel files and performance evaluations of Group Legal and/or Legal Department attorneys who worked with claims adjusters on group long-term disability claims from January 1, 2005 to the present.

- Request Nos. 27-32 (Northwestern/Standard RFP), which seek the performance reviews and evaluations of their claims handlers (Jim Kostur, Christie Schlunegger-Carriles, Kim Korn), in-house legal personnel (Julie Bolt, Tony Padilla, and Holly Truxel), and Request No. 34, which seeks the performance evaluations of Dr. Garrison.

Numerous courts have ordered the production of performance evaluations stating their relevance to an administrator's conflict of interest. In *Sullivan*, the Southern District ordered the production of the performance evaluations of the 11 individuals involved in the evaluation of Plaintiff's claim for LTD benefits for 3 years because they were "closely related to the issue of conflict of interest") 2010 WL 391821, *2; *see also Zewdu*, 264 F.R.D. at 629 (ordering performance evaluations of medical professional involved in handling of Plaintiff's claim); *Gessling v. Group Long Term Disability Plan*, 639 F.Supp.2d 947, 948(S.D. Ind. 2009)(ordering production of performance evaluations of each insurance company employee involved in the administration of the plaintiff's claim for a five year period). In *Knopp v. Life Ins. Co of N. Am.*, 2009 WL 5215395 at *4 (N.D. Cal. 28, 2009), the court held that performance evaluations for medical consultants or companies "is *closely related to the issue of conflict of interest*" because if such parties were rewarded for "providing opinions adverse to a claimant, that *would significantly affect the credibility of their evaluations*." Similarly, courts have ordered production of documents regarding employee compensation or standards for employees involved in a claim. *See Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 650 (E.D. Cal. 2009); *Myers v. Prudential Ins. Co. of Am.*, 581 F.Supp.2d 904, 914 (E.D. Tenn. 2008).

Each of the discovery requests described above seeks information on performance evaluations of the

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                                    Case No.  09 CV 2843 W (MDD)

1    employees and consultants used to administer Plaintiff's claim.  All of this is highly relevant to whether these

2    individuals were potentially biased in their assessment of Plaintiff's claim.  As a result, Defendants should be

3    ordered to produce documents responsive to these requests.

### 3.    Documents Relating to Jim Kostur's Panel at the 2009 Eastern Claims Conference

Plaintiff also propounded discovery requests seeking information and documents relating to claims

adjuster Jim Kostur's panel presentation at the 2009 Eastern Claims Conference:

- Request Nos. 36 and 37 (Northwestern/Standard RFP), which seek documents relating to Mr. Kostur's panel presentation at the 2009 Eastern Claims Conference "The Cutting Edge of Disability Income:  Session One – Close and Personal".

- Interrogatory No. 25 (Standard Interrogatories and Northwestern Interrogatories) requested that all comments made by Mr. Kostur while on the 2009 Panel be described in detail.

Defendants' objection that it would be impossible for Mr. Kostur to recall all comments, while

refusing to provide any response, is absurd and borders on spoliation of evidence.  Plaintiff repeatedly

requested as early as February 2009, that Mr. Kostur provide him a copy of his remarks for the panel; thus,

Mr. Kostur was on notice to preserve his comments. Kim Decl., Exh. C**.**  Moreover, Mr. Kostur's comments

are highly relevant, as he served as one of the adjusters for the claim, and has represented to the public that

he is a Director for *both* Standard *and* Northwestern. Kim Decl., Exh. D (http://www.linkedin.com/pub/jim-

kostur/7/486/157).  If Defendants persist in contending that no documents regarding this presentation exist,

Plaintiff will seek a spoliation instruction from the Court.

Moreover, Defendants' assertion that such comments are not relevant to this case are not well taken.

The description of the panel was as follows (italics added):

> This ever-popular session will address diverse, current issues that are dealt with daily in the processing and evaluation of all types of both Individual and Group Disability Income Claims. Seasoned panelists will lead the discussions . . . *Some examples of topic items are the impact of the current economy on DI claims, disputed and non-disputed settlements, and field investigations*.  Kim Decl., Exh. C.

As a "seasoned" panelist, Mr. Kostur was being asked to offer his viewpoints on claims handling of group

disability claims in a bad economy – a thinly veiled reference to how to deny claims -- which clearly is

relevant to the issue of whether he had a biased view of Plaintiff's claim.  Not surprisingly, Plaintiff alleges

in the Complaint that Mr. Kostur adjusted Plaintiff's claim in accordance with the approaches Mr. Kostur

discussed at the conference.  Complaint, ¶33-34.  Clearly, the content of Mr. Kostur's remarks relate both to

-19-

1  Plaintiff's allegations and the issue of bias, which in turn relate to Defendants' conflict of interest.  As a

2  result, Defendants should be compelled to provide information and documents responsive to the requests.

3  **4.    Documents Relating to Defendants' Policies and Procedures**

4      Plaintiff also propounded the following discovery requests seeking documents relating to defendants'

5  policies and procedures in handling disability claims:

6  •   Request Nos. 5-10, 12, 14-16 (Northwestern/Standard RFP), seek documents relating to Defendants
       policies and procedures regarding the handling of attorney-client communications in the course of an
7      ERISA group long-term disability claim.

8  •   Request Nos. 18-22 (Northwestern/Standard RFP), seek documents relating to Defendants' guidelines
       for handling heart problems where stress if a factor in impairment, including medical opinions,
9      articles, communications and other authorities.

10     In *Friedrich v. Intel Corp.*, 181 F.3d 1105 (9th Cir.1999), the Ninth Circuit held that an insurer's

11 refusal to follow its own policies and procedures demonstrated the extent of the insurer's conflict of interest.

12 Id. at 1110.  And courts have repeatedly held that policies and procedures relating to an administrator's

13 claims handling are discoverable evidence relating to that administrator's conflict of interest.  *See, e.g.*,

14 *Zewdu*, 264 F.R.D. at 628 (ordering production of documents pertaining to insurer's training of its medical

15 staff regarding handling of disability claims, claims manuals used in processing plaintiff's claim and

16 procedures used by the insurer in evaluating claims of disability); *McCurdy*, 2007 WL 915177 at *4

17 (permitting discovery on "all in-house Metropolitan Life Insurance Company, documents, including claim

18 and procedural manuals, guidelines, bulletins, and memoranda, describing or pertaining to the handling of

19 disability claims in general, and disability claims involving [plaintiff's particular medical issue]").

20     Here, the discovery requests seek documents that are clearly relevant to the Defendants' structural

21 conflict of interest and bias in determining Plaintiff's claim.  Here, it is clear from the "Confidential Request

22 for Legal Review" that the Defendants' procedures regarding attorney-client communications created during

23 the claim process are relevant policies and procedures that Plaintiff and other similarly situated claimants are

24 subject to.  Those procedures must be produced.  Moreover, Defendants' attempt to avoid production of

25 responsive documents to Request Nos. 18-22 that are contained in the claim files of other insureds (Joint

26 Decl. ¶4(b)) is unwarranted.  Clearly these documents that relate to Defendants' handling of other claims

27 involving the same condition as Plaintiff's is relevant evidence of Defendants' claim handling procedures.

28 As the Ninth Circuit held in *Abatie*, a court may weigh a structural conflict of interest more heavily if "has

-20-

1    repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making

2    decisions against the weight of evidence in the record." *Abatie*, 458 F.3d at 968-69. Defendants have made

3    no effort to identify how many similarly situated claimants exist, and therefore can make no claim that

4    complying with the discovery requests would be burdensome. Plaintiff therefore requests that Defendants be

5    compelled to produce documents responsive to the above-mentioned discovery requests.

6        **5.    Documents Relating to the Complete Claim File Including Electronic Documents**

7        Defendants objected to Request Nos. 2 and 3 (All Defendants RFP), which requests all electronic data

8    (including any and all backup storage) relating to Plaintiff's claim, and the search criteria and results of any

9    search for electronic data relating to Plaintiff's claim. Defendants also claimed it already complied with

10   Request No. 4 (All Defendants RFP), which request the entire contents of Plaintiff's claim, by producing the

11   claim file with its Initial Disclosures (Joint Decl., ¶4(a), but Plaintiff contends that Defendants cannot make

12   that contention without providing documents responsive to Request Nos. 2 and 3.

13       Defendants' objections are baseless, as Plaintiff is merely requesting the complete claim file as

14   Defendants are required to provide under the ERISA regulations. Under the ERISA regulations, an

15   administrator is required at a claimant's requests to "provide all documents, records, and other information

16   relevant to the claimant's claim for benefits." 29 C.F.R. §2560.503-1(j)(3). Relevance is defined broadly in

17   the ERISA regulations, including all documents "*submitted, considered, or generated in the course of*

18   *making the benefit determination*, without regard to whether such document, record, or other information was

19   relied upon in making the benefit determination". 29 C.F.R. §2560.503-1(m)(8)(ii) (emphasis added). The

20   requests merely require Defendants to provide those documents "submitted, considered, or generated" by

21   Defendants in administering Plaintiff's claim, and should therefore be produced.

22       Instead of making a good faith effort to comply, Defendants have made a blanket refusal to provide

23   electronic documents responsive to Plaintiff's requests or show any efforts it has made to search for

24   responsive electronic documents (*see* Separate Statement, Request Nos. 2-3 (All Defendants RFP)), and

25   have made no showing that complying with these requests would be unduly burdensome. Plaintiff is more

26   than happy to make proposals (including suggesting search terms for the backup devices) to enable

27   Defendants to fulfill their duty to provide responsive documents, and therefore requests that responsive

28   documents (including electronic documents) be produced.

### 6. Defendants Cannot Show Any Burden from Producing the Requested Information of Documents As It Has Refused to Provide Any Information Regarding Its Efforts In Complying With The Discovery Requests

Defendants' blanket objections that complying with Plaintiff's discovery requests would be overly burdensome are baseless, as Defendants have failed to make any showing that they conducted any meaningful search for the requested documents. Defendants have even issued blanket objections to the following discovery requests seeking Defendants' explanation of their efforts to comply with Plaintiff's discovery requests:

- Interrogatory No. 24 (All Defendants RFP), which seeks Defendants' description of Defendants' searches for documents requested in Plaintiff's document requests.

- Request Nos. 2 and 3 (Northwestern/Standard RFP), which requests all electronic data (including any and all backup storage) relating to Plaintiff's claim, and the search criteria and results of any search for electronic data relating to Plaintiff's claim.

Because Defendants refused to discuss what efforts it engaged in when responding to Plaintiff's discovery requests, they are in no position to argue that the discovery requests are unduly burdensome. They should be ordered to comply with the above mentioned discovery requests.

### C. Defendants Should Be Compelled to Provide Information and Documents Relating to Its Policies and Procedures That Are the Subject of Plaintiff's Claim for Statutory Penalties and Equitable Relief Claim

The following discovery requests relating to Defendants' policies and procedures, and efforts to obtain those policies and procedures, are not only relevant to Plaintiff's ERISA benefits claim, they are also highly relevant to Plaintiff's claim for statutory penalties and claim for equitable relief due to Defendants' breaches of fiduciary duty:

- Interrogatories Nos. 1-15 (Standard Interrogatories and Northwestern Interrogatories), and Request Nos. 1-17 (Northwestern/Standard RFP), which seek information and documents relating to Defendants' practice of using in-house legal personnel to administer and deny claims under a "defendable standard".

- Request Nos. 18-22 (Northwestern/Standard RFP), which seek policies and procedures relating to handling of claims for insured's with heart problems where stress is a factor.

Information and documents relating to Defendants policies and procedures (especially those policies and procedures relating to Defendants' use of in-house legal counsel to administer claims, and those relating to Defendants treatment of insureds with the same condition as Plaintiff's) are highly relevant to Plaintiff's claim for breach of fiduciary duty and equitable relief under 29 U.S.C. §1132(a)(3). Judge Whelan noted that Plaintiff's allegation that Defendants engaged in "intentional adoption of biased claim practice and

procedures" stated a viable claim for breach of fiduciary duty under section 1132(a)(3) that survived a

motion to dismiss.  Doc. #22, 5:3-14 (citing *Ehrman v. Standard Insurance Co.*, 2007 WL 1288465, * 4

(N.D.Cal., May 2, 2007)).  At the very least, it appears that Defendants have a practice of using in-house

legal counsel through various methods (the "Attorney du jour", the Confidential Requests for Legal Review)

to dictate group disability claim denials on a "defendable" basis.  Given that Plaintiff's equitable relief claim

survived a motion to dismiss, he must be given a meaningful opportunity to engage in discovery regarding

his allegations, which are substantiated by those attorney-client documents disclosed to Plaintiff.

Moreover, in denying Defendants' Motion to Dismiss, Judge Whelan noted that Plaintiff's request for

"documents related to claims procedures, policy statements, and guidelines" was covered under section

1024(b)(4) because it covered documents showing how the Plan was operated, by enabling  "plan

participants to know what benefits they may be entitled to, what circumstances may preclude them from

obtaining benefits, and what procedures they must follow to obtain benefits." Doc. #22, 7:10-16.  The

discovery requests listed above not only seek information on the policies and procedures that were not given

to Plaintiff, despite his written requests prior to litigation, they also seek information on Defendants' efforts

(or lack thereof) in obtaining those policies and procedures.  Specifically, it is clear that Plaintiff, and other

similarly situated claimants, are subject to the procedures of the attorney group that assists in claims handling

during the claim and internal appeal process. The information and document sought by the discovery

requests are clearly relevant to the question of whether Defendants provided "documents related to claims

procedures, policy statements and guidelines" under section 1024(b)(4), and should be produced.

### D.    Defendants Should Be Compelled to Provide Responses and Documents Without a Protective Order

Defendants have improperly condition the production of documents on a protective order for the

following discovery requests (Joint Decl. ¶4):

- Interrogatory No. 23 (All Defendants RFP), which seeks Defendants' retention policies for electronic data.

- Request Nos. 6, 11, 13 which seek documents (including recordings and videos) regarding the policies and procedures for handling group disability claims, including but not limited Plaintiff's claim.

- Request Nos. 9 and 10 (All Defendants RFP), which seek documents regarding agreements between Standard, Northwestern and Foley relating to claims handling.

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF
DISCOVERY DISPUTE                                                          Case No.  09 CV 2843 W (MDD)

- Request No. 23 (Northwestern/Standard RFP), which seeks documents reflecting procedures regarding physician consultant reports from January 1, 2005 to the present.

- Request No. 33 (Northwestern/Standard RFP), which requests performance criteria, standard or goals for employees responsible for administration or disposition of disability claims.

- Request No. 35 (Northwestern/Standard RFP), which requests performance criteria for physician consultants.

ERISA regulations require that these documents be producd to insureds by the insurer, which is acting in a fiduciary capacity for the Plan and its insureds. 29 C.F.R. §2560.503-1(j)(3); 29 C.F.R. §2560.503-1(m)(8)(ii).  ERISA makes no provision for providing thse documents under a protective order. Nor does ERISA permit an insurer to refuse to provide the documents unless either the Plaintiff agrees or a court issues a protective order.  Standard is therefore required to produce the documents without a protective order.  Indeed, just as the attorney-client documents cannot be there would be no reason to withhold documents such as those requested.  These are the very documents by virtue of which the Plan is administered.  Plan participants have an absolute right to them and have every right to share those with other participants and to compare them with other plans which might be available to them.  ERISA imposes providing insurers with widespread immunity again any state law claims seeking remedies, for example, for any compensatory or punitive damages.  Jury trials are not permitted, the record is normally limited only to those documents within its claim file thereby depriving the insured of even the opportunity to testify.  And its decision often cannot be overturned by a court unless its actions can be found to be arbitrary and capricious. But with those immunities come certain obligations.  One of those obligations is to provide specified documents.  The insurer might otherwise wish the production of these documents to be subject to conditions, such as a protective order decision, but that is not an option provided under ERISA.  *See Levy v. Ina Life Ins. Co. of New York*, 2006 WL 3316849 (S.D.N.Y. Nov. 14, 2006)(ordering the production of claims handling guidelines without a protective order.)

Even if a protective order were justified under ERISA, in order to justify subjecting documents to a protective order, the seeking party much make a clear showing of good cause.  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test".  Factors showing that good cause exists include:  1) whether the information is being sought for a legitimate purpose; 2) whether disclosure will

violate any privacy interest; 3) whether disclosure will cause a party embarrassment; 4) whether disclosure is important to public health and safety; 5) whether sharing of information among litigants will promote fairness and efficiency in litigation; 6) whether the party seeking the protective order is a public entity or official; and 7) whether the case involves issues of public importance. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3rd Cir. 1994). The party seeking the protective order has the burden of showing a specific injury. *Pearson v. Miller*, 211 F.3d 57, 72 (3rd Cir. 2000). Even if good cause is shown, the court must balance the interests in allowing the discovery against the burdens to the parties and nonparties. *Wood v. McEwen*, 644 F.2d 797, 801-02 (9th Cir. 1981).

Based on the criteria of *Pansy*, there is no basis to condition production of the information and documents to a protective order, as Defendants have not made a showing of good cause. Defendants have identified or proven through admissible evidence any privacy interest or threat to public health and safety justifying a protective order. In addition, making the requested information and documents publicly disclosed will promote fairness and efficiency in litigation, as Defendants are repeat litigants in the area of ERISA disability claims; making each new plaintiff seek the same documents through discovery proceedings is a waste of courts' resources. Moreover, the discovery requests were propounded with a legitimate purpose to seek relevant information under the ERISA regulations (29 C.F.R. § 2560.503-1(j)(3), (5)(i), 29 C.F.R. § 2560.503-1(m)(8)(iv)) . There is no language in the ERISA regulations justifying the use of a protective order when producing relevant documents, and no protective order should be imposed here. Plaintiff therefore requests that the Court deny Defendants' request for a protective order and produce the documents and information responsive to the above requests.

## IV.    CONCLUSION

The Defendants cheated in handling Mr. Klein's claim, and through their own errors, the Defendants now stand to get caught. Like any determined cheater, the Defendants wish to hide the truth from discovery. But for the foregoing reasons, Plaintiff respectfully requests that the Court order Defendants to provide information and/or documents in response to Plaintiff's discovery requests, as indicated above.

Dated: May 16, 2011                    PILLSBURY & LEVINSON, LLP

                         By:    /s/ Brian H. Kim
                                Brian H. Kim
                                Attorneys for Plaintiff KENNETH S. KLEIN

PLAINTIFF'S BRIEF IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE                    Case No.  09 CV 2843 W (MDD)